Case No. 18-2241 Hall & Associates FOIA Requester Appellant v. Environmental Protection Agency Mr. Hall for the appellant, Ms. Myron for the appellate Let's let the courtroom clear first. Alright, Mr. Hall, good morning. Very good. Thank you, Your Honor. May it please the Court, my name is John Hall. I'm counsel for Hall & Associates. This case concerns a FOIA request that sought records pertaining to EPA's position on the national applicability of the Eighth Circuit decision in Iowa League of Cities. The lower court's ruling granting EPA partial summary judgments should be reversed for three reasons. One, EPA lacked a non-conclusory affidavit in support of withholding. Two, the court improperly applied a formal announcement test to determine when the agency's decision had been rendered. By the way, which was never even raised by either party as a basis for withholding. And three, the court never applied a like-most-favorable analysis to the entire record in concluding that EPA should be granted partial summary judgment. So on those three grounds, we believe reverse is appropriate. I would note further that EPA did not appeal the decision. So the following points of the district court's determination are uncontested. One, EPA withheld the records solely on the claim that it never rendered a non-acquiescence decision. Two, EPA's only support of this position was a declaration the court determined was conclusory and, in fact, contrary to a plethora of agency records that were submitted by appellants. So in the face of these findings, it's simply improper to award EPA partial summary judgment because EPA bears the burden of proving the applicability of the claimed exemption with a non-conclusory affidavit. This is black-letter law. Under those circumstances, normally there's only two options that happen once a court determines the affidavit's conclusory. Either you direct the agency to go back and come back with a non-conclusory affidavit and give them a second bite at the apple, if you will, to make the decision and to justify the decision. Or you order the release of the records. Those are the two options. The courts should never have gone in and then conducted a further analysis of the records to then give the rationale of what is the precise date when the decision was rendered. EPA never submitted anything on that. So your position is that once the district court concluded that, in fact, a non-acquiescence position had been adopted at the time they decided to do what they called a case-by-case approach outside the Eighth Circuit, at that point when the district court explained to them the law of non-acquiescence, they should have then had them go back to the drawing board and do another affidavit that said, well, when did that decision? Yes, Your Honor. Specifically that. As a matter of fact, that's one of the reasons we submitted a request for discovery. The factual issue that was remaining at that point was, so precisely when did this decision occur? There's little question that when the agency sent a media release out saying we are not going to apply this decision outside the Eighth Circuit, no question the decision was clearly in place at that point. The question is, at what point prior to that, prior to the release of that record was it made? And that we thought required discovery, and that's what we asked for. I was trying to clarify your position, because you talked about discovery in some of your briefs, but here you were saying, no, the correct response once the district court said, let me explain to you what non-acquiescence means, and what it means you're not doing the Eighth Circuit outside the Eighth Circuit, you've non-acquiesced. And so at that point, I thought you said then what happened, the agency should have had to go back and say, okay, now justify, now what can you justify as pre-decisional and what not? And you're right. That's not discovery. That's different. You're right. I was actually moving to the next point of the agency had hotly disputed, of course, whether or not a decision had ever been rendered. We had all kinds of records showing about the range of how this decision was reigned and when it was made. I presume the next affidavit would come back and say, hmm, well, okay, we think the decision was made on this specific date, and then we had all these records that would have said it's an earlier date. So that's where I was going with the discovery point. The next thing would have been after that. Most likely we would have sought discovery. But would it be discovery, or would it just be you would have your arguments that their assertion as to when it happened is flawed and not justified by the record, and they would have to substantiate their position as to when that decision was made. So you'd have the sort of same arguments you wouldn't have discovery. Well, Your Honor, shall we say the details of how this decision was made, since it stretched over a, I would say, six-month period from the time the Iowa League decision was rendered to when they finally issued the death statement, that, by the way, that death statement was simply a clarification to say, yes, what we said at an earlier meeting in a public meeting was correct. That was the purpose of that document. So somewhere actually before even the earlier announcement we believe the decision was rendered, I presume we would have had to have found out precisely why was a team of EPA officials sent to EPA Region 7 to talk about how the Iowa League case would only apply in the Eighth Circuit. And when you look at the EPA announcement more carefully, which the district court truncated, by the way, EPA said it only applies in the Eighth Circuit, and the next statement was Kansas in Region 7 is outside. Not there, because it's outside the Eighth Circuit. So we felt that at that point they clearly had sent the team to deliver the message, which meant somebody made the decision before the team was sent. Right. And all the records it issued, every single one was prepared after that decision was made in the intergovernmental meeting in EPA Region 7. So, but in any event, you're correct. It should have been kicked back. EPA should have submitted whatever it was going to submit next, and the court should not have created the decision date per se. The other error that really was a serious error by the Court was applying a formal announcement test to determine when the decision had been rendered. You know, the Court need only look at page 1 of the opinion. It says right on the face of page 1, for the purpose of the Freedom of Information Act, records that reflect an agency's internal deliberations prior to its non-acquiescence announcement are fairly deemed both pre-decisional and deliberative. And the Court, throughout its analysis, kept looking for this. Sometimes they called it a formal announcement. Sometimes they called it a public announcement. But they always said the decision is not rendered until you announce it. And the case law is very clear in this circuit. There is no formal announcement requirement when you're deciding when a decision is rendered. You look at the facts. You look at the agencies back and forth. You look at their actions. Are they implementing a decision? Is there evidence of that, which we had ample before the Court? And you decide, in light most favorable to the requester, when you believe the decision was rendered. I would point out that this formal announcement issue got compounded by the Court. No one ever argued this. EPA certainly didn't say a decision is not final until it's, a decision is not rendered until it's formally announced. But the Court created this one all on its own. And that was a violation of Rule 56-F. We were never even given an opportunity to argue that that's not the correct standard that applies. The Court just did it sui sponte. Do you think the Stieberger test is the right test for non-acquiescence? The Stieberger test, do you think that's the right test for non-acquiescence? I would say it gives some characteristics of, you know, where an agency says, I'm limiting a decision to the circuit that it's in. That's a pervasive disregard. Well, there's two ways I guess sometimes non-acquiescence pops up. Sometimes you're not sure what an agency is going to do. And then you look at their actions thereafter. And then in other cases that come up, they continue to argue the same position they had before. In this particular case, we didn't have that at all. The agency met internally, decided the Eighth Circuit decision was improperly staking out its approach to this is how we're going to non-acquiesce, how we're going to keep our what they call their existing regulatory interpretation. And I might note to the Court, the words case-by-case don't appear anywhere in the test statement, in the document the Court looked at. EPA came up with, and oh, by the way, the decision will be case-by-case. And I've done administrative cases for enough years, and I know this Court has done more. And there's a lot of cases when somebody says, well, we're doing case-by-case kind of gives you an opportunity to maybe avoid review because you can point to that and say, well, obviously I haven't made a decision yet. That's not really true in this case. I'm just trying to under your theory that after the district court determined that non-acquiescence had been made at least no later than November 19th, in your view, I guess. It would be no later than. And then we should go back and they should do it again. It seems to me at some point the standard for non-acquiescence is going to be important for them to establish when it actually happened. And that's why I was asking you about the Stever test, which is not from this Court. I mean, Stever, it's basically let's just go with what the definition of non-acquiescence is. A decision by a decision to not apply or adhere to a court decision in other jurisdictions. Okay. That's the legal, we'll call that the legal definition. I think Steberger was talking about how you determine whether non-acquiescence was done, not when, but whether the agency made an announcement. It talked about. So when you say, right, because at least as the district court describes it, Steberger has two prongs. Certainly there's two ways of showing non-acquiescence. A formal announcement, which is what she found here. Or deliberate, pervasive, and ongoing manner in which they aren't following it. And what I'm, right, so I think your position is, so I'm not sure she was making a public announcement rule as opposed to saying that prong of the Steberger test is what's applied here. And the other one being deliberate, pervasive, and ongoing. That's what I'm asking you about the test. Okay. And it's, I'm not sure the problem here is, as you say, it's a public announcement test unless it's, Steberger is not even getting the quiet measure because Steberger's articulation is not the one you just gave. As I recall, the precise language of Steberger was something along the lines, just, my co-counsel has the case so I can go back to it. Normally an agency will either announce its position, so that was kind of the lead-in, or you'll find this pervasive and then the court grabs the announced. Well, Mr. Pierce said both halves of it. Yeah. I mean, to the degree, to the degree a formal announcement would identify non-acquiescence, oh, sure, it certainly would. It just doesn't tell you, it just doesn't tell you when the decision of that was made. Suppose, and here's the, here's the case in point, the death statement that gets put out on the 19th. Suppose the death statement had been held by the agency for a year. They decided they were going to be non-acquiescent. The internal documents are very clear that they said we're non-acquiescent. But then they don't formally announce it with the death statement. They don't send this thing out for a year. That doesn't mean they didn't render the decision for a year. That just means the formal announcement came out later. That's why this circuit's, you know, this circuit's case law that says we don't look for a formal announcement in deciding whether an agency has taken a position. We look at the records and see when the agency did this because if you required a formal announcement, the agency could make all kinds of internal regulatory decisions that it could implement, which you wouldn't be able to get a review of until a formal announcement. And, you know, so the court, the court very heavily pointed to formal announcements. So to the degree, and I guess here's the precise answer, to the degree it's believed that Stieberger is saying you have to have a formal announcement for a non-acquiescent decision, well, that's not true. You can make that decision, and whether or not you formally announce it or you just call up the regional offices and say, hey, we're non-acquiescent, continue to apply the existing regulations. Roberts. Mr. Hoffman, you made reference earlier to the, what I call the November 13 meeting. Yes. The annual four-State governmental affairs meeting. And as I recall, and maybe I didn't get this right, but you were citing that as an annual meeting.  And you said that the decision had been made by that time. Oh, sure. I mean. What's your argument? The argument on that is straightforward, Your Honor. EPA headquarters does not send a team of anyone out to Region 7 unless they're decided what they want to do, how they want to do it. The moving forward document, which was dated October. But at that meeting, didn't the representative of the EPA say headquarters doesn't have everything figured out yet? Oh, that's true. I mean, that doesn't, just because you don't have everything figured out yet doesn't mean you haven't made the decision. As the example we gave was. So what's your evidence that what took place at that meeting showed that a decision had been made? EPA specifically said at the meeting the Iowa League decision is only applicable in the Eighth Circuit. It was quoted in two trade journals, which were part of the record that we submitted. I thought the comment was that EPA's current contention is that the Iowa League ruling will only be binding, and they haven't worked everything out yet. That's a little more ambiguous than. Well, Your Honor, in a light most favorable, if my current contention is X, that means I've made a decision currently that my position is X. Oh, by the way, I might change my position in the future. Contention is, you know. Which they did. The semantic difference is different than saying our decision is. Well, Your Honor. And this suggests it was under debate, discussion going on, final decision had not yet been made. I think the record as a whole shows that that is not the case. The key record that the district court just never analyzes, the moving forward document dated October 30th, which says assumption moving forward, non-acquiescence outside the Eighth Circuit. Then it gave a list of implementation actions that they were going to undertake. One of them was go to the regional offices. Another one was prepare a memo for release to the rest of the country. That was exhibit, that's 1B, document 1B that they didn't release. So, you know, they established what they were going to do and how they were going to do it. I thought the October 30th meeting said we were going to discuss whether EPA should non-acquiescence outside the Eighth Circuit. No. There were two October 30th meetings. Unfortunately, the court focused only on the pre-meeting that occurred in the Office of General Counsel. The follow-up meeting after that specifically, which is what the moving forward document was, which was the General Counsel's Office, Office of, I believe, Compliance Enforcement was there, and Office of Water, that's where they had the moving forward document. And that document, by the way, is, that's exhibit 28 to the record. But that's headed by the assumption, right? That the document says assume. Yes. It says assumption moving forward. And, again, and I realize I'm out of time. And it just says clarify the responses. You know. And it says, you know, like most favorable, our assumption moving forward is we're doing X. And then they start doing X. That's implementation of a decision. And when you realize that the death statement was simply issued to confirm what the prior statement was in EPA Region 7, it wasn't to create something new. It was, they were contacted by BNA to say, you said this isn't going to apply nationwide. I'd like an answer back. Nancy Stoner says, yes, that's what we've already decided. Okay. They put out, and I'm going to say this the next day again at the NAWQA conference. You know, taking all that, you know, like most favorable, I think one could easily have determined the decision had been rendered before these other documents were prepared. But, again, the court never conducted that analysis. It did like most favorable for EPA. There's no like most favorable of the record that was submitted by Hall and Associates. Thank you. If there's no further questions. All right. Thank you. Ms. Myron. Thank you. May it please the Court, Laura Myron for the government. The record in this case demonstrates, which, as you can see on JA-144, an affidavit submitted as part of the summary judgment record, that the records withheld here were draft talking points, their preliminary memoranda, they discuss options, they discuss possible paths forward for the implementation of this decision. And as a result, the district court correctly concluded that they're pre-decisional and deliberative and privileged under Exemption B-5 and were Well, those were all drafted in terms of the agency's view that consciously deciding to have a case-by-case approach outside the Eighth Circuit is not a non-acquiescence decision. And if, in fact, what the district court here held, and you have not challenged on appeal, is that, no, once you decided to go case-by-case outside the Eighth Circuit, that was non-acquiescence, then to the extent all these things we're talking about how we're going to implement case-by-case or how that's going to work, that doesn't show that they were pre-decisional to a non-acquiescence decision. Maybe they'd be deliberative on a different ground, but you haven't. You've only argued they were pre-decisional for a non-acquiescence decision. Respectfully, Your Honor, I don't think that's exactly what the district court said. The district court said that the desk statement released on November 19th was a formal announcement of non-acquiescence and relied quite heavily on the part of the statement that says, outside the Eighth Circuit, the EPA will work with States to implement et cetera, et cetera, consistent with the agency's existing interpretation of the regulations. And it emphasized that particular language, the existing regulations language, and said that that amounted to a statement of non-acquiescence. It did not say that just a sort of case-by-case approach in which you're considering all of the options, no actions had yet been taken inconsistent with the Eighth Circuit's decision would amount to formal announcement of non-acquiescence. Kagan. Well, do you position that when the government, the government announces things it hasn't decided before it announces them? I mean, that's the day it announced it. My expectation is that the government decided that position before it was announced and, in fact, the record here, you know, shows that there were talking points and stuff prepared for that announcement. So the decision was presumably made some moments before the announcement. Well, certainly some moments before the announcement. Okay, what about one day before? But I think the record and the documents in question here specifically show that prior to November 19th, there was still ongoing discussion amongst agency decision-makers about what the... On November 18th? I don't know if there's a specific November 18th document, Your Honor. But, yes, the documents at issue in this case, which are dated before November 19th, do reflect that there is still ongoing discussion. There hasn't been a final decision on what the path forward shall be. But that all begs the question of what, because, again, that declaration came in the morning, we haven't made a non-acquiescence decision. But, in fact, what the district court said was, look, on the 19th, you were no longer... You were clear you were no longer going to apply... Not no longer, you were not going to apply the Eighth Circuit outside... The Eighth Circuit decision outside the Eighth Circuit. Now, what you were going to do and how things were going to work, that was still to be resolved. But that's a different, maybe, deliberative process than the one about whether we're going to apply the Eighth Circuit decision outside the Eighth Circuit. There are two different deliberative processes, and we have no declarations addressing that. The declarations are all written in terms of a decision the district court rejected, which is that there is no... There has not yet been. We still have not yet decided what we're doing outside the Eighth Circuit. The declarations, and this is paragraph 17 on page 144, say that the documents reflect internal deliberations among EPA employees about the decision... I'm sorry. Could you just... I'm sorry. Is that the supplemental or the renewed? I got three niggles. Yes. So this is the renewed declaration, which was submitted alongside the renewed motion for summary judgment, not the supplemental declaration. Okay. It says... I'm sorry. We were doing where? Paragraph 17. Okay. It says that the records reflect internal deliberations among EPA employees about the Iowa League of Cities decision, including possible ways to interpret the decision, the potential programmatic and regulatory implications of this decision, both within and outside the Eighth Circuit, and how to conduct discussion of these issues internally as well as with the public. So it's not the case that all you have here is a declaration that says these decisions have to be made under the acquiescence decision, and therefore... Yeah, but we have a district court decision that said this decision was November 19th, everything before pre-decisional. Yes, Your Honor. And so if the district court was wrong that that was the moment in time when this decision was made, then the rationale given doesn't work. No, Your Honor, because the rationale given is not that it was pre-decisional to the November 19th decision. It was pre-decisional to a final decision about how to move forward following the Eighth Circuit decision, how to implement it. This Court has recognized that there need not be a particular final decision in order for documents to be pre-decisional and deliberative, in order for them to reflect and be privileged under Exemption B-5 and appropriately withheld. And this Court can, by looking at the documents, as the district court did, determine that they, in fact, are draft talking points. They are draft memoranda. They discuss various options moving forward and, as a result, are privileged and properly withheld under the Freedom of Information Act. It does not require the agency to go back and say something different. As I said, I think what we have submitted here and also what you find in the Vaughan Index beginning on page 155 of the Joint Appendix walk through how each of these documents reflect the internal deliberations of the agency. And that is sufficient, as this Court has recognized and others have recognized, for the documents to be privileged under and appropriately withheld under the Freedom of Information Act. Roberts. During your friend Mr. Hall's argument, he said repeatedly, criticized the district court for not construing the evidence in the light most favorable to him. How do you respond to that argument? Well, Your Honor, as this Court has said in the FOIA context, where there are affidavits from the agency that explain in detail why the documents were withheld, they go through the various context of the documents and whatnot, that summary judgment may be granted on the basis of those affidavits where there's no evidence of bad faith and where they're not directly contradicted by something else in the record, which is the case that you have, which is what you have here. And so summary judgment was, under this Court's FOIA case law, appropriate, as in most FOIA cases, summary judgment is the appropriate mechanism for resolving the case. There's no evidence, as the district court found, that the agency acted in bad faith. I thought you were going to say something like the decision, the determination of when, what is pre-decision and what is not, is a legal question, not a factual question. Well, certainly that's also true, Your Honor. I mean, you could – I took – perhaps I misunderstood what – exactly what you were getting at with your question, but it is also the case that the question here about whether the documents are privileged and whether they are pre-decisional is a legal question. And does the – Well, it's got to be both, right? I mean, when they qualify as pre-decisional, but before you can decide that something's pre-decisional, you have to know the fact of when the decision was made. Well, not necessarily, Your Honor. And two things in response to that. First, it's a question of law as applied to fact, not a straight question of law. But it's also not a straight question of fact. And you don't need to know when the ultimate decision was made in order to conclude that documents are pre-decisional. In fact, as the Supreme Court has recognized, there may never be a final decision. If you can tell from the – The never be a final decision was rejected by the district court here. The district court said a decision was made November 19th. When the district court said a decision to non-acquiesce was made November 19th, was that a fact-finding or was that a legal ruling? That was an application of law as applied to fact. The district court said – Application of what law? What amounts to non-acquiescence. Right. Yes. And so the district court said – So she said November 19th. Is that a fact? There's no question – Is that a fact-finding? No, Your Honor. There's no question that – I don't know what the content of the statements was. The only question is what is the legal significance of that statement? And the district court said that it amounted to a decision – it amounted to a statement of non-acquiescence, and that as a result the other documents after it are no longer pre-decisional, and we haven't contested that and we've released those documents. So – I'm still having a lot of trouble. I get that she applied a legal test to determine what non-acquiescence is, and found that non-acquiescence was made here. But to do that, to apply that legal standard, you have to find some facts. And then you apply the legal standard to those facts. So you have to find some facts, too. And they're just plain-up fact findings, correct? Well, to – You can't apply law to facts without finding facts. Can we agree on that? Yes, Your Honor. And all of – So that was the – She didn't just find that's the date of the desk statement. She said that's the date the non-acquiescence decision was made. Is that a fact finding? No. What she said was the desk statement made on November 19th amounts to a decision of non-acquiescence. And that is a – Well, then she didn't do her job because she had to decide whether things on November 18th were pre-decisional. As she did, she had to find that the decision was made on the 19th. Otherwise, she would have to go, fine, the desk statement certainly was, but let's go back and see if anything else was. And she didn't do that. Well, Your Honor, there's no question that the desk statement was a decision made on November 19th. The question is what is the legal significance of that decision, and does it render the documents that predate that somehow no longer privileged? And so the fact finding – it's not a fact finding to say that a statement, which is uncontested, released at a time that was uncontested, has the legal significance of amounting to a formal statement of non-acquiescence. And so the things that predate that are, in fact, privileged because they're pre-decisional and deliberative. It does not require the Court to go back and say no previous decision was made, especially when you can tell on the face of the decision – I'm sorry. It doesn't have to get – Doesn't it need to go back and say there was no prior decision either? Because on the face of the documents, you can tell that the agency was still debating the various paths forward, that their draft documents, that they reflect potential options, that they're unfinished and whatnot. And so it was perfect for the Court to conclude that documents dated after November 19th were no longer pre-decisional, which we have not contested, and that those were privileged. To which – pre-decisional to which decision? Whether to non-acquiesce? When was the decision to non-acquiesce made? So the district court said that the formal desk statement, which was released on November 19th, amounted to a statement of non-acquiescence. Correct. Yes. But that doesn't mean that's when the decision to non-acquiesce was made. But there's no evidence in the record here to suggest that there was some previous decision. And, in fact, that's how agency decisions – Well, that's a very – that's a very disputed argument in this case. They came into court saying the decision was made, and they had a lot of August, September, October, different days in November. And the government came in and said it was never. And so that seems to me a fact to which she had to apply legal rules, but very much a disputed fact. I disagree, Your Honor, in that there is no dispute about the various statements that were made by the agency along the way. The only question is whether those statements have the legal significance of a decision by the agency not to acquiesce. And the district court said, especially relying on the consistent – It's not just a legal decision. But if the agency had decided in a hypothetical on November 17th – I don't know if there's any documents that day. That's why I'm picking that one. On November 17th, the agency said, we're pulling the trigger. We're going to go with non-acquiescence outside the Eighth Circuit. Prepare the desk statement and other public announcements and guidance to people as to how we're going to implement it. And they did that on November 17th. Would a document on November 18th be pre-decisional to the non-acquiescence decision? If you had that kind of formal decision by the head of the agency that was acknowledged and you suggested that the subsequent document was pre-decisional to that decision as a matter of date, I don't think that that would count. But that's not what you have here. What you have here are documents that reflect the agency was continuing to discuss. There were e-mails from lower-level staff members to higher-level staff members. But what they were discussing matters. Were they discussing non-acquiescence or not, or a different subject, which might be protected as deliberative because it's a different subject, but not on the grounds argued here. And that is that, okay, now that we're non-acquiescent, how is this going to work outside the Eighth Circuit? What are we going to tell folks to do? How are we going to explain ourselves to courts? All these types of things. Your Honor, I disagree that there was some decision previous to the November 18th desk statement that where the agency said, okay, we're going to non-acquiesce and how should we implement it. It might not have been something that clear. That's why a fact finding had to be made. No, Your Honor. A fact finding does not have to be made because the question is not whether, as a factual matter, there is a subsequent decision to which the documents are pre-decisional. The question is whether they're privileged and whether they reflect the pre-decisional deliberative qualities that that privilege protects, including the fact that the agency had filed its declarations and defended it. That is how the agency filed its declarations and defended it. The agency explained that the documents are drafts. They explained that they're discussing potential options, that they are deliberative internally, that they're from lower-level staff members to higher-level staff members, suggesting and proposing various paths forward. And it's not correct to say, based on the affidavit and the Vaughn index in the record here, that the agency only said that these are pre-decisional prior to the non-acquiescence decision. And the fact that the district court said, that those documents that postdate the November 19th statement are no longer pre-decisional, but it did consider the deliberative and pre-decisional quality as all of the things I just mentioned. Well, it had to do that. It can't just be pre-decisional. It has to also be deliberative. But it quite clearly, if I read the decision, it was that they qualify as pre-decisional insofar as they are part of the process leading to a final decision, I'm on JA 50, by the APA regarding whether it would non-acquiesce. That's the pre-decision she's doing. It doesn't mean that there aren't other decisions there, right? That things could be deliberative, too. There's all kinds of stuff going on all the time that's deliberative. It's just, it seemed to me that she was finding the date of non-acquiescence and saying, before that, pre-decisional. After that, she reserved other questions. Yes, Your Honor. But again, the question before this Court is whether the documents are privileged and whether they were properly withheld under FOIA as a result. And that is a legal question that this Court reviews de novo. This Court can look at the documents in question and conclude, based on their preliminary nature, based on the content of them in which they suggest that they're continuing to discuss options and various things forward, that they are properly redacted and withheld under Exemption B-5. So even if you think, which I disagree, that the district court made that particular finding on that narrow ground, that does not require this Court to come to a different conclusion. This Court can come to its own conclusion about the deliberative and pre-decisional nature of the documents and can conclude that they were appropriately redacted under FOIA as a question of law and reviewed de novo. Can I just ask you one thing? And I just want to be careful. In the in-camera documents, there's only one redaction on page 3 of document 1B. And I don't understand what the point of it is. And you may not be able to answer it here in court. If you can't answer it here in court, if you could submit a letter, if you think you need to submit it in camera to explain the grounds for that, that one particular redaction, if you can answer it here in court, that would be. Whatever you're most able to do. Just bear with me for a moment. Like I said, it's something you can do later, and you can decide whether it needs to be in camera or a public explanation. Yeah, I think it would be more appropriate for us to respond directly to the Court. I just wanted to flag that one for you. Okay. I just wanted to flag that one. But I'd be happy to do so. Okay. I want to ask you one thing. Do you consider any of these four people, Weiss, Nervin, Boren, Stone or Nagel as decision-makers? What is your position on who made the decision? I mean, there are a lot of documents among these four people. It's not your position or is it your position that none of these four people was a decision-maker? It's not. It's our position that none of those four people are the person who made the ultimate decision of the agency. They all are varying levels of agency officials, but there isn't one that has particular The director of the Water Permits Division, Deborah Nagel, is not a decision-maker. Well, certainly she's a decision-maker, Your Honor, but the question of whether the agency would, across the board, apply the Iowa League of Cities decision outside the Eighth Circuit or not isn't something that she would be making on her own. All right. All right. Thank you. Does Mr. Paul have any time left? All right. Why don't you take two minutes? Thank you, Your Honor. I'll only make three quick points. Regarding the claim that facts were not in dispute, the declarations are most certainly directly contradicted by, as the Court even termed it, a plethora of agency records, not only with regard to whether a decision was made, but because EPA didn't even address the issue to date, we believe the decision was made fairly back in time. Number two, regarding document 4A, in particular, the talking points, there is nothing in the draft whatsoever about document 4A. In fact, the document 4, which was finally released in total, says, the talking points we gave to Nancy Stoner, quote, these were the points we discussed in Region 7. It doesn't say thinking about anything, and it goes on to say, these are the talking points on how we intend to apply the Iowa League decision. It doesn't say, please take a look at these talking points and decide whether or not you intend to do it. Here are the points, and they were the same ones we talked about in Region 7. I would note further that there is no question that Nancy Stoner was very clear on the 18th of November that the decision had already been decided, and of course she was going to say the same the next day. The next day, these talking points were given in on the 18th. Everybody knew what they were doing on that day. Last point, and it keeps getting raised, the fact that somebody has some ongoing discussions, that does not mean a decision has not been rendered. I mean, this Court has dealt with that issue on more occasions than I care to think about. Of course there were ongoing discussions. The subject was complex. How precisely are we going to carry out the decision we rendered? Fine. I would say the talking points lists how they're going to carry those out. That's what it was intended to do. The Court can look at them themselves. And so with that, we just ask for the relief we have requested, and if there are no further  Thank you. Thank you.
judges: Henderson, Griffith, Millett